# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**LAURENANO ANGULO RIASCOS,**

    **Petitioner,**

v.

    **CASE NO. 8:14-cv-2558-T-27JSS**
    **CRIM. CASE NO. 8:10-cr-504-T-27TBM**

**UNITED STATES OF AMERICA,**

    **Respondent.**
_____/

## ORDER

**BEFORE THE COURT** are Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Dkt. 1), Petitioner's memorandum in support (CV Dkt. 2), the Government's response (CV Dkt. 5), and Petitioner's reply (CV Dkt.10). Upon review, Petitioner's Section 2255 motion is denied.

## Procedural Background

In relation to the May 15, 2009 and July 27, 2009 interdictions of stateless semi-submersible vessels carrying cocaine in international waters, a December 2, 2010 Indictment charged Petitioner with: (1) knowingly and willfully conspiring with others to possess with the intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States in violation of Title 46, United States Code, Sections 70503(a) and (b), Title 21, United States Code, Section 960(b)(1)(B)(ii), and Title 18, United States Code, Section 3238; (2) knowingly and willfully conspiring with others to operate and embark in a semi-submersible vessel without nationality and with the intent to evade detection into, through, or from international waters in violation of Title 18 United States Code Sections 2285(a) and (b); and (3) knowingly and willfully conspiring with others

to distribute five kilograms or more of cocaine, knowing and intending that such cocaine would be unlawfully imported into the United States, in violation of Title 18 United States Code Section 3238 and Title 21 United States Code Sections 959, 960(b)(1)(B)(ii), and 963. (CR Dkt.1). The Indictment also included a count for forfeiture pursuant to Title 21 United States Code Sections 853 and 881(a), Title 28 United States Code Section 2461(c), and Title 46 United States Code Section 70507. (*Id.*).

On August 22, 2012, a jury found Petitioner guilty on all three counts of the Indictment. (CR Dkt. 64). On November 9, 2012, he was sentenced to 300 months on Counts One and Three and 180 months on Count Two, all concurrent. (CR Dkt. 72). Petitioner appealed, challenging the length of his sentence. (CR Dkt. 93). The Eleventh Circuit affirmed. (*Id.*).

Petitioner signed his Section 2255 motion on October 1, 2014 (CV Dkt. 1),[1] and presents the following four grounds for relief:

**Ground One:**
> INEFFECTIVE ASSISTANCE OF COUNSEL[:] CONGRESS' LACK OF POWER AND AUTHORITY TO PROSCRIBE CONDUCT OUTSIDE THE TERRITORIAL WATERS OF THE UNITED STATES AND THE HIGH SEAS, PROSECUTOR MISCONDUCT, AND THE FEDERAL COURT'S LACK OF JURISDICTION TO INDICT, CHARGE, PROSECUTE, AND CONVICT.

(CV Dkt. 2 at 2; CV Dkt. 1 at 4).

**Ground Two:**
> INEFFECTIVE ASSISTANCE OF COUNSEL[:] VIOLATION OF THE PETITIONER'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL, IN CONCERT WITH THE VIOLATION OF THE FIFTH AND SIXTH AMENDMENT JURY TRIAL RIGHT[]. ALL OF

---

[1] The Government does not challenge the motion's timeliness.

WHICH CONSTITUTES STRUCTURED ERROR WHEN THE COURT ERRONEOUSLY INSTRUCTED THE JURY ON THE ESSENTIAL AND SUBSTANTIAL ELEMENT OF JURISDICTION.

(CV Dkt. 2 at 9; CV Dkt. 1 at 5).

**Ground Three:**

> INEFFECTIVE ASSISTANCE OF COUNSEL[:] COUNSEL'S FAILURE TO RAISE THE ISSUE OF DRUG TYPE AND QUANTITY BEING ELEMENTS OF A FEDERAL DRUG OFFENSE, IN LIGHT OF THE SUPREME COURT'S RULING IN ALLEYNE v. U.S., 133 S. Ct. 2151 (2013), CAUSING THE PETITIONER TO SUFFER AN INCREASED SENTENCE.

(CV Dkt. 2 at 13; Cv Dkt. 1 at 7).

**Ground Four:**

> INEFFECTIVE ASSISTANCE OF COUNSEL[:] DISTRICT COURT[']S CLEAR ERROR AND ABUSE OF DISCRETION IN ATTRIBUTING [TO] THE APPELLANT THE DRUG QUANTITY AND LEADERSHIP ROLE STATED IN THE PRESENTENCE REPORT, WITHOUT THE PROSECUTION PRESENTING ANY EVIDENCE OR TESTIMONY TO PROVE THE FACTUAL ACCURACY AND RELIABILITY OF THE INFORMATION IN THE PRESENTENCE REPORT.

(CV Dkt. 2 at 17; CV Dkt. 1 at 8).

## **Discussion**

In each of the four grounds, Petitioner claims that his counsel was ineffective. The Supreme Court has set forth a two-part test for analyzing ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). According to *Strickland*, the petitioner must,

> [f]irst, . . . show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the

3

> deficient performance prejudiced the defense. This requires showing
> that counsel's errors were so serious as to deprive the defendant of a
> fair trial, a trial whose result is reliable.

*Id.* Petitioner must satisfy both elements, otherwise "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* Ultimately, he bears the burden to overcome "the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688 (internal citation omitted).

Because they are related, Grounds One and Two will be discussed together, and Grounds Three and Four will be discussed together.

**A.     Grounds One and Two**

In Ground One, Petitioner claims ineffective assistance of counsel for his counsel's failure to: (1) challenge the United States' jurisdiction over the interdicted vessels; (2) raise a claim of prosecutorial misconduct for knowingly and intentionally indicting, charging, prosecuting, and convicting petitioner without jurisdiction; (3) raise a claim that the United States lacked jurisdiction over the alleged cocaine at issue; and (4) fully and fairly investigate the jurisdictional issue. Similarly, in Ground Two, he argues that his counsel failed to raise on appeal that the district court erroneously instructed the jury that the vessels were subject to the jurisdiction of the United States and that the cocaine was being imported into the United States.

Petitioner's claims are based on his allegations that the semi-submersible vessels were interdicted within the territorial waters of Colombia and that the United States, therefore, had no authority to proscribe conduct of those on board or otherwise connected to the vessels and their cargo.

The Constitution of the United States empowers Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. Art. I, § 8, cl. 10. The clause, as interpreted by the Supreme Court, grants to the United States "the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations." *United States v. Bellaizac–Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012). The United States recognizes the "high seas," otherwise known as international waters, as those waters located more than twelve (12) miles from foreign coasts. *See U.S. v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) ("The United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts."). And the Maritime Drug Law Enforcement Act's prohibition on "knowingly or intentionally . . . manufactur[ing] or distribut[ing], or possess[ing] with intent to manufacture or distribute, a controlled substance," 46 U.S.C. § 70503(a)(1), "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* at § 70503(b). Under the act, "a vessel without nationality" is subject to the jurisdiction of the United States. *Id.* § 70502(c)(1)(A).

Petitioner appears to concede that the vessels were stateless. (*See* CV Dkt. 10 at 6 ("It is irrelevant that the vessels interdicted by the Coast Guard on May 16, 2009[,] and July 27, 2009, were

stateless vessels . . . .")). Nevertheless, he states that the May 15, 2009 and July 27, 2009 interdictions occurred in Colombian territorial waters. Referring to a certification by the United States Coast Guard Commander involved in the interdictions, Petitioner states that the May 15, 2009 interdiction occurred about sixty-five (65) miles off the coast of Colombia, while the July 27, 2009 interdiction occurred about seventy (70) miles off the coast of Colombia. (CV Dkt. 11 Ex. 1 at 2, 5). Citing *United States v. Louisiana*, 394 U.S. at 22-23 (1969), and *Bellaizac–Hurtado*, 700 F.3d at 1258, Petitioner contends that Colombia's territorial waters extend 200 miles from its coastline and that, because the vessels were interdicted less than that distance from the coastline, the United States could not assert jurisdiction over them.

The court in *Louisiana* expressly noted that a coastal nation may properly exert jurisdiction "in a contiguous zone *not to exceed 12 miles from the coast*." 394 U.S. at 23 n.26 (emphasis added) (citation and internal quotation marks omitted). *Louisiana* therefore does not support Petitioner's contentions. Each vessel was interdicted beyond Colombia's twelve-mile territorial limit and was, therefore, subject to the United States' jurisdiction "[t]o define and punish . . . Felonies committed on the high Seas." U.S. Const. Art. I, § 8, cl. 10.[2]

In *Bellaizac–Hurtado*, the Eleventh Circuit reasoned that "[b]ecause drug trafficking is not a violation of customary international law, . . . Congress exceeded its power, under the Offences Clause [of the U.S. Constitution] when it proscribed the defendants' [drug trafficking] conduct in

---

[2] Petitioner also appears to argue that the United States erred by citing to trial testimony that the May 15, 2009 interdiction occurred fifty miles from the coast of Colombia and the July 27, 2009 interdiction occurred approximately 200 miles from the coast of Colombia. (CV Dkt. 5 at 12-13; CV Dkt. 10 at 6). It is unnecessary to address this contention since Petitioner's conceds that the interdictions occurred approximately sixty-five (65) miles and seventy (70) miles off the coast of Colombia demonstrates that the vessels were in international waters, subject to the jurisdiction of the United States.

6

the territorial waters of Panama." *Bellaizac-Hurtado*, 700 F.3d at 1258. Since the vessels in this case were intercepted in international, rather than territorial waters, *Bellaizac-Hurtado* is distinguishable from and therefore inapplicable to this case.

To the extent Petitioner contends that the cocaine was not subject to the jurisdiction of the United States because the individuals arrested on board the interdicted vessels indicated the drugs were not destined for the United States[3] and that the statutes cited in the Indictment do not apply because the conduct took place in the territory or waters of another country, those contentions are without merit, for the reasons discussed.

As explained, the vessels were subject to the jurisdiction of the United States because they were in international waters. Congress expressly intended that Title 21 of the United States Code, Section 959, "reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States," 21 U.S.C. § 959(d). And the Eleventh Circuit has consistently "upheld the authority of Congress to extend [] the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014) (alteration in original) (internal quotation marks omitted).

Finally, Petitioner argues, with respect to Count Three, that the Court failed to correctly instruct the jury on the element of jurisdiction and with regard to the intended destination of the cocaine. However, a review of the trial transcript demonstrates that the jury was instructed:

---

[3] Petitioner relies on responses on the interview forms indicating that "all of the alleged drugs on the [self-propelled semi-submersible] and [go fast boat] went to Ecuador, Panama, Guatamala, and Mexico." (CV Dkt. 2 at 5).

> As to Count One . . . . I instruct you that the vessels interdicted on May 15th and 16th of 2009, as well as the vessel interdicted on July 27, 2009 were vessels subject to the jurisdiction of the United States.
>
> . . .
>
> [A]s to Count Three, the defendant can be found guilty only if the following facts are proved beyond a reasonable doubt: One, again, two or more people in some way agree to try to accomplish a shared and unlawful plan; two, again, that the defendant knew the unlawful purpose of the plan and willfully joined in it; and, three, that the object of the unlawful plan was to distribute a mixture and substance containing a detectable amount of cocaine, knowing and intending that such substance would unlawfully be imported into the United States.

(CR Dkt. 85 at 89-92).

The jury was further instructed:

> the word knowingly means that an act was done voluntarily and intentionally and not because of a mistake or by accident.
>
> The word willfully means that the act was committed voluntarily and purposely with the intent to do something the law forbids, that is, with the bad purpose to disobey or disregard the law.
>
> While a person must have acted with the intent to do something the law forbids, before you can find that the person acted willfully, the person need not be aware of the specific law or rule that his conduct may be violating.

(CR. Dkt. 85 at 95).

As to Count One, the jury was correctly instructed that the interdicted vessels were subject to the jurisdiction of the United States. *See* 46 U.S.C. § 70504(a) ("Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues

arising under this chapter are preliminary questions of law to be determined solely by the trial judge.").[4]

As to Count Three, the jury instruction tracked the elements that the Government was required to prove. *See* 21 U.S.C. § 959(a) ("It shall be unlawful for any person to manufacture or distribute a controlled substance . . . intending, knowing, or having reasonable cause to believe that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States."). And although Petitioner briefly contends that the Court incorrectly described the burden of proof, he neither explains nor provides support for that assertion. The trial transcript demonstrates that the jury was correctly instructed that it could find Petitioner guilty only if the required facts were proven beyond a reasonable doubt. (CR Dkt. 85 at 81).

Because the vessels were subject to the jurisdiction of the United States, Petitioner cannot show that his counsel's performance was deficient in failing to raise the arguments relating to jurisdiction, or that any of the claimed errors by counsel with regard to jurisdiction prejudiced him. *See U.S. v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."). Accordingly, Grounds One and Two are denied.

---

[4] Petitioner also argues that the Court erred by waiting until trial began to decide whether the interdicted vessels were subject to the jurisdiction of the United States. The Government moved for a pretrial determination that the jurisdiction over the vessels was established by State Department certifications, but the Court delayed its jurisdictional determination until it could consider evidence at trial to support the certifications. (CR Dkt. 44; CR Dkt. 84 at 131-132). Petitioner's argument is without merit. *See United States v. Tinoco*, 304 F.3d 1088, 1112 (11th Cir. 2002) (affirming jurisdictional determination made after considering trial testimony).

## B. Grounds Three and Four

In Grounds Three and Four, Petitioner alleges that his counsel failed to raise on appeal the issue of drug quantity and type as required elements for determination by the jury, thereby resulting in an erroneous increase in his sentence, in violation of his right to due process. Petitioner also challenges the Court's determination to attribute to him, for sentencing purposes, a leadership role in the conspiracy, without any presentation of evidence by the Government at the sentencing hearing on that issue.

The jury determined that Petitioner was guilty on all counts, including Count Three, which charged that Petitioner conspired to distribute "5 kilograms or more of cocaine," while "knowing and intending that such substance would be unlawfully imported into the United States. (CR. Dkt. 64 at 2-3). The presentence investigation report held Petitioner accountable for more than 44,000 kilograms of cocaine. (CR Dkt. 80 at 24; CV Dkt. 2 at 15). Among other cases, Petitioner cites *Alleyne v. United States*, 133 S. Ct. 2151 (2013), in support of his assertion that the jury was required to determine the quantity and type of drugs attributed to him. However, Petitioner misconstrues *Alleyne* as requiring that the jury determine the precise drug quantity attributable to a defendant.

Under *Alleyne*, "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. at 2155. Although Petitioner argues that the jury should have made findings of drug shipments and drug quantities resulting in the more than 44,000 kilograms of cocaine he was held accountable for, what triggered Petitioner's mandatory minimum sentence of ten years was the jury's finding of at least five kilograms of cocaine. *See* 21 U.S.C. § 841(b)(1)(A)(ii)(II). Petitioner concedes (CV Dkt. 2 at 14-15),

that the Indictment charged, and the jury found, that he conspired to distribute "5 kilograms *or more* of cocaine." (CR. Dkt. 64 at 2-3 (emphasis added)). He was therefore sentenced to the minimum mandatory term based on the jury's finding of drug quantity. His arguments are without merit.

As for his claim of ineffective assistance of counsel based on his leadership role enhancement, his contention that the enhancement was applied without evidence or testimony is simply not accurate. Although additional evidence or testimony was not presented during the sentencing hearing, the Court relied on the trial testimony in applying the aggravating role enhancement.[5] *See United States v. Guyton*, 596 F. App'x 873, 877 (11th Cir. 2015) (explaining that the court "was permitted to consider the entire record before it at sentencing.").

As Petitioner has not demonstrated that his counsel erred in failing to raise these sentencing-related arguments, Grounds Three and Four are denied.

## C. Evidentiary Hearing

An evidentiary hearing is not warranted because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

---

[5] Specifically, the Court stated:

> I note that the defendant has objected to the factual variation set forth in Paragraphs 8 through 20 under the offense conduct portion of the presentence report. I would imagine that he does not agree or would never stipulate to those facts; but in my view, the facts accurately reflect the evidence and testimony that was elicited at the trial of this case over which I presided.

(CR Dkt. 80 at 5). The Court determined and explained that the facts in the PSR were credible in light of the evidence presented at trial.

11

Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is **DENIED**. The clerk is directed to enter judgment against Petitioner and close this case.

### Certificate of Appealability Denied

A prisoner whose motion to vacate is unsuccessful has no absolute right to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller–El v. Cockrell*, 537 U.S. 322, 335–36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Petitioner cannot make that showing. Since he is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** this 12th day of October, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Petitioner, *pro se*, Counsel of record